OPINION
Appellant Georgeanna Barth appeals from the May 25, 2000, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, terminating appellant's parental rights and granting permanent custody of Tyler Michael Neal, appellant's son, to appellee Stark County Department of Human Services.
 STATEMENT OF THE FACTS AND CASE
On May 17, 1999, appellee Stark County Department of Human Services filed a complaint for permanent custody of Tyler Michael Neal, who was born on May 14, 1999. While appellant is Tyler's mother, Tyler's alleged father, David Neal, has not established paternity. The complaint alleged that Tyler was a neglected child. Pursuant to a Judgment Entry filed the same day, Tyler was taken into shelter care custody. Following a hearing held on May 18, 1999, Tyler was committed to the custody of the Stark County Department of Human Services. Thereafter, an evidentiary hearing was held on July 22, 1999, before a Magistrate. Pursuant to a Judgment Entry/Magistrate's Order filed the same day, Tyler was found to be a dependent child. However, at the August 9, 1999, dispositional hearing, appellee withdrew its motion for permanent custody since appellant had started on her case plan. The trial court, at such time, placed Tyler in the temporary custody of the Stark County Department of Human Services. Subsequently, appellee, on February 11, 2000, filed a Motion for Permanent Custody of Tyler. Both phases of the permanent custody hearing were held on May 16, 2000. Pursuant to a Judgment Entry filed on May 25, 2000, the trial court terminated appellant's parental rights and granted permanent custody of Tyler to appellee. It is from the trial court's May 25, 2000, Judgment Entry that appellant now prosecutes her appeal, raising the following assignments of error:
 I THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN (SIC) CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTEREST OF THE MINOR CHILDREN (SIC) WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I, II
Appellant, in her two assignments of error, argues that the trial court's award of permanent custody of Tyler, appellant's son, to appellee was against the manifest weight and the sufficiency of the evidence. Appellant specifically contends that the judgment of the trial court that Tyler cannot or should not be placed with appellant within a reasonable period of time and that the best interest of such child would be served by the granting of permanent custody to appellee were against the manifest weight and sufficiency of the evidence. We disagree. A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279 . A reviewing court must not substitute its judgment or that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610. As is stated above, following a hearing held on July 22, 1999, the trial court found Tyler to be a dependent child as defined in R.C. 2151.04 and in August of 1999 Tyler was placed in the temporary custody of the Stark County Department of Human Services pursuant to R.C. Section 2151.353(A)(2). R.C. 2141.413(A) provides that, under these circumstances, the Department of Human Services can file a motion with the court requesting permanent custody of the child. R.C. 2151.414(B) states in part that the court may grant permanent custody to the movant if the court determines at a hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that, if the child is not abandoned or orphaned, the child cannot be placed with either parent within a reasonable time or should not be placed with his/her parents. R.C. 2151.414(E) states that "[i]f the court determines, by clear and convincing evidence, . . . that one or more" of the listed factors exist as to each parent, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Such section, in relevant part, provides as follows: "(E)(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. . . .
(E)(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
We have set forth the language in R.C. 2151.414(E)(1) and (4) because those are the subsections the trial court found were applicable to the case sub judice. At the May 16, 2000, hearing, evidence was adduced that appellant continuously and repeatedly failed to substantially remedy the conditions that initially caused Tyler to be placed outside appellant's home. As part of her case plan, appellant was to successfully complete Goodwill parenting classes and to find and maintain stable housing. The case plan further required appellant to be psychologically evaluated and to receive counseling. Appellant, at the May 16, 2000, hearing, testified that she had not attended Goodwill parenting classes or any other type of parenting classes. In accordance with her case plan, appellant was evaluated by Dr. Gerald Bello, a psychologist. As a result of his evaluation of appellant, which was completed in September of 1999, Dr. Bello concluded that appellant "wasn't in a condition to parent effectively" due to her intellectual and mental limitations. Transcript of May 16, 2000, hearing at 19. For such reason, Dr. Bello recommended that appellant receive bi-weekly counseling for approximately one year. While appellant testified that between October of 1999, and May 16, 2000, the date of the hearing, she had attended "probably"six counseling sessions, appellant was unable to recall the name of her counselor. Transcript of May 16, 2000, hearing at 35. In addition, appellant provided the trial court with no documentation concerning such counseling. Not only was there clear and convincing evidence that appellant repeatedly failed to substantially remedy the conditions that led to Tyler being removed from her home, but testimony was also adduced at the May 16, 2000, hearing that appellant had demonstrated a lack of commitment toward Tyler by failing to regularly visit him and by failing to maintain adequate, stable housing for Tyler. At the time of the hearing, appellant, who was in the process of moving to Michigan, had been living with her alleged future in-laws in a two bedroom home for approximately four months without paying rent. Appellant testified that just prior to such time, she had been living rent free with friends in Lisbon, Ohio for seven to eight months in a two bedroom mobile home. According to appellant, a total of four people were living in the mobile home. Appellant further testified that when Tyler was born in May of 1999, appellant was living in a separate residence with different friends. Appellant testified that she stayed with such friends for approximately three weeks. In short, appellant's housing situation the year or so prior to the May 16, 2000 hearing had been sporadic. Appellant's aunt, Patty Creswell, testified at the May 16, 2000, hearing. At the time of the hearing, Tyler was residing in Creswell's home along with his sister, Brittany Barth. Creswell testified that, over the course of a year, appellant had visited Tyler approximately three times and had gone for periods of over ninety days without visiting her son. According to Creswell, "when it comes to visits or anything else, . . . it's like she [appellant] don't show up or don't call or like even having a stable home or a job, . . .' Transcript of May 16, 2000, hearing at 9. Creswell further testified that, over the period of one year, appellant had lived at at least three different residences and that David Neal, Tyler's alleged father, had never visited Tyler. Based on the foregoing, we find that there was clear and convincing evidence that Tyler cannot be placed with appellant within a reasonable time, or should not be placed with appellant. The next issue for determination, therefore, is whether, in accordance with R.C. 2151.414(D), permanent commitment is in the best interest of the child. Pursuant to R.C. 2151.414(D), the trial court is to consider various factors in determining the best interest of the minor child: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; 2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; 3) the custodial history of the child; and 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. As is stated above, at the time of the hearing, Tyler was living with his aunt and older sister, Brittany Barth. Testimony was adduced at the hearing that while Tyler's alleged father had never visited with him or established paternity, appellant, by her own admission, had only visited with Tyler approximately five times since he was born and that her visits were "off and on." Transcript of May 16, 2000, hearing at 42. As Tyler's Guardian Ad Litem noted in her report, appellant had "shown very little interest in Tyler". At the hearing, appellant further testified that Tyler was "doing very well" while living with Creswell and was developmentally on target. Transcript of May 16, 2000, hearing at 42. In short, as the trial court stated in its May 25, 2000, Judgment Entry, the evidence established that Tyler had little bond with either parent. In contrast, Tyler's Guardian Ad Litem, in her report, indicated that Tyler had bonded well with Patty Creswell and her family and is "very much loved." The Guardian Ad Litem further indicated that the Creswells, who were in the process of adopting Brittany, were interested in adopting Tyler. Based on the foregoing, we find that the trial court's findings that Tyler cannot and should not be placed with appellant within a reasonable period of time and that it was in Tyler's best interest for appellant's parental rights to be terminated were supported by clear and convincing evidence. We further find that the trial court's granting of permanent custody of Tyler to appellee is supported by competent, credible evidence and is not against the manifest weight or the sufficiency of the evidence.
The Judgment of the Stark County Court of Common Pleas, Family Court Division, is, therefore, affirmed.
 ___________ Edwards, J.
Gwin, P.J. and Farmer, J. concur